## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| THE BIG TEN CONFERENCE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| STEVE GAZIBARA, | ) | **JURY TRIAL DEMANDED** |
| an individual doing business as BIG10TENS | ) | |
| | ) | |
| and DOES 1-10 | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT

Plaintiff, THE BIG TEN CONFERENCE, INC. (the "Conference"), through its attorneys, complains of defendants Steve Gazibara ("Mr. Gazibara") and Does 1-10 ("Defendants") as follows:

1.     This is an action for an injunction, an accounting and money damages arising from Defendants' willful trademark infringement, trademark dilution by blurring and tarnishment and common law unfair competition.   Specifically, this action arises out of Defendants' operation of a website called "Big10Tens" and registration and use of the domain name <big10tens.com> and related Facebook, Twitter and Instagram accounts using the Conference's famous trademarks.  Defendants' website is centered on promoting certain social aspects of college-life and depicts, among other things, binge drinking, drug use and partial nudity.

2.     Defendants reach thousands of individuals through their <big10tens.com> website and related social media pages.  Particularly, the "Big10Tens" Facebook page has over 22,000

"likes," the "Big10Tens" Twitter page has over 100,900 followers, the "Big10Tens" Instagram page has nearly 50,000 followers, and the "Big10Mens" Instagram page has over 7,500 followers. Defendants also sell infringing merchandise through their "store" located on the "Big10Tens" website, including T-shirts that feature the Conference's trademarks and display paid advertisements on the site.

3. In an attempt to put an end to Defendants' infringement and dilution of the Conference's valuable trademarks, the Conference issued several letters to Defendant, Mr. Gazibara demanding that he cease use of the Conference's trademarks. Mr. Gazibara ignored the Conference's letters, and to date, the Conference has not received a response. The Conference now brings this action to cease the ongoing and irreparable damage being suffered by the Conference as a result of the Defendants' blatant disregard for its trademark rights.

## THE PARTIES

4. The Conference is a Delaware non-profit corporation with its principal place of business at 5440 Park Place, Rosemont, Illinois 60018.

5. On information and belief, Defendant Steve Gazibara is an individual residing in Portage, Indiana. Mr. Gazibara is the owner, agent and/or officer of a business that he operates under the name "Big10Tens." Mr. Gazibara operates a website <big10tens.com>, a Facebook account <facebook.com/Big10Tens>, a Twitter account <twitter.com/Big10Tens>, and Instagram accounts <instagram.com/big10tens> and <instagram.com/thebig10men>, all which prominently advertise the name "Big10Tens" or "Big10." On information and belief, Mr. Gazibara has registered the domain name <big10tens.com> using the Conference's trademarks without permission. Mr. Gazibara sells infringing merchandise through the website

2

<big10tens.com> and uses this website and related social media pages to generate advertising revenue by wrongfully exploiting the Conference's trademarks.

6.      The Conference is ignorant of the true names of defendants Does 1 through 10 ("Doe Defendants"), inclusive, and therefore sues those defendants by such fictitious names.  On information and belief, Doe Defendants are responsible for the acts alleged in this Complaint.  When the true names of the Doe Defendants are ascertained, the Conference will seek leave of this Court to amend this Complaint to name those individuals or entities.

## JURISDICTION AND VENUE

7.      This is an action for trademark infringement and trademark dilution.  This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051, et. seq. (the "Lanham Act").

8.      This Court has jurisdiction over the subject matter of this action pursuant to at least 15 U.S.C. § 1121 (actions arising under the Lanham Act) and 28 U.S.C. §§ 1331, 1338 and 1367.

9.      This Court has personal jurisdiction over Defendants, including Mr. Gazibara, based upon their contacts with this forum, including at least regularly and intentionally doing business here and committing acts giving rise to this lawsuit here.  Defendants transact or have transacted business in the United States and within this judicial district for their personal gain and profit, and are subject to the jurisdiction of this Court at least by having directly infringed the subject U.S. trademark registrations owned by the Conference, and such infringement has taken place within the United States and the Northern District of Illinois.  Defendants purposefully availed themselves of the benefits and protections of this forum, and the harm caused by Defendants has been and will be suffered in this forum state and in this judicial district, among others.

10.     Venue is proper in this judicial district pursuant to at least 28 U.S.C. §§ 1391(b) and (c).

## THE CONFERENCE AND ITS TRADEMARKS

11.     Operating under the name "Big Ten" since at least as early as 1917, the Conference is a collegiate athletic conference comprising an association of fourteen world-class academic institutions, including the University of Michigan; University of Iowa; Michigan State University; University of Illinois at Urbana-Champaign; Indiana University; University of Minnesota-Twin Cities; University of Maryland; University of Nebraska-Lincoln; Northwestern University; The Ohio State University; Pennsylvania State University; Purdue University; Rutgers University; and University of Wisconsin-Madison.  The Conference has been in existence since 1895, and for 120 years it has remained a national leader in intercollegiate athletics.

12.     For nearly a century, the Conference has taken steps to maintain and protect its intellectual property rights and to ensure that the public associates its trademarks with genuine Conference products and services and activities that are commensurate with the values surrounding university athletics.  Indeed, the Conference owns and maintains a number of U.S. trademark registrations covering a broad range of goods and services (collectively referred to herein as the "Big Ten Marks").  The Big Ten Marks include, but are not limited to (1) U.S. Registration No. 1,969,353 for the word mark BIG TEN covering "*publications, namely books, pamphlets, brochures, newsletters, journals, magazines, handbooks, manuals and programs relating to athletic activities*," "*entertainment services, namely sponsoring and coordinating the presentation of athletic events and contests*" and "*association services, namely promoting the interests of member institutions participating in various sports attractions*"; and (2) U.S.

4

Registration No. 1,858,081 for the word mark BIG TEN, which covers "*all-purpose athletic bags, backpacks and fanny packs*," "*beverage glassware, plastic coasters and mugs*" and "*plush toys, games and athletic equipment; namely, board games, action skill games, yo-yos, dominoes, balls (soccerballs, volleyballs, baseballs, golfballs, footballs and miniature footballs), fishing tackle, flying discs, hockey pucks, golf tees, balloons, swim floats for recreational use, and swim action game equipment; namely, volleyballs and basketballs for pools*." Copies of these registrations are attached as Exhibits A and B hereto.

13. The Conference also owns the following registrations: (1) U.S. Registration No. 2,589,261 for the word mark BIGTENSTORE; (2) U.S. Registration No. 4,050,908 for the B1G logo; and (3) U.S. Registration No. 4,184,017 for the B1G logo. Copies of these registrations are attached hereto as Exhibits C-E.

14. The Conference has invested significant resources to promote the "Big Ten" name and the "Big Ten Conference" as an organization and as a brand. The Conference's investments in promoting its goods and services in connection with the Big Ten Marks include national television advertisements, prominent displays of the Big Ten Marks at the Conference's nationally televised athletic events, newspaper and magazine ads, promotional materials and merchandise distributed at universities throughout the United States, online advertisements and the like.

15. As a result of the Conference's significant investments and prominent and consistent promotion of its goods and services under the Big Ten Marks for nearly a century, the Big Ten Marks have become famous. Indeed, the Big Ten Marks were famous long before Defendants commenced their infringing activities.

## **DEFENDANT'S UNAUTHORIZED USE OF THE BIG TEN MARKS**

16.     On information and belief, Defendants registered the domain name <big10tens.com> on or about November 5, 2012.  This domain name incorporates the Big Ten Marks in their entirety.

17.     Defendants are using the domain name <big10tens.com> in connection with a website called "Big10Tens" that is dedicated to promoting, among other things, certain social behaviors of some college-aged individuals such as binge drinking. Some exemplary images of Defendants' website are set forth in Figures 1-3 below.



**Figure 1**
Source: http://www.big10tens.com/



**Figure 2**
Source: http://www.big10tens.com/category/party/



**Figure 3**
Source:  http://www.big10tens.com/about-us/

18.     To promote this website, Defendants have created and are using a logo displaying

the mark "Big10Tens"and the slogan "In Your Conference Out of Your League," which is a

direct reference to and implies affiliation with or sponsorship by the Conference.  (*See* Figure 4).

Defendants have also coined the slogan "#ADED," which stands for "All Day Every Day," and

refers to the theme that Defendants' website is premised on—binge drinking and partying "all

day every day."



**Figure 4**
Source: http://www.big10tens.com/

19.     Defendants are also operating Facebook, Twitter and Instagram pages under the name "Big10Tens" and "Big10," which incorporate the Big Ten Marks in their entirety.  (*See* Figure 5-8).



**Figure 5**
Source: https://www.facebook.com/Big10Tens



**Figure 6**
Source: https://twitter.com/Big10Tens





**Figure 7**
Source: http://instagram.com/big10tens#



**Figure 8**
Source: http://instagram.com/thebig10men/

20.     As a result of their unauthorized use of the Big Ten Marks, Defendants have conjured up a substantial fan base and following with over 79,000 followers on Twitter, 15,000 "likes" on Facebook and 19,000 followers on Instagram (between both pages).

21.     Defendants generate revenues from the operation of the <big10tens.com> website and related Facebook, Twitter and Instagram accounts through paid advertisements and the sale of consumer merchandise, some of which display the Big Ten Marks. (*See, e.g.*, Figures 9 and 10).



**Figure 9**

Source: http://www.big10tens.com/category/the-big-ten/



**Figure 10**
Source: http://www.big10tens.com/category/store

22.     To promote the <big10tens.com> website, Defendants are also using the Big Ten Marks as "key words" in the meta tags of the website, which helps draw individuals searching for the Conference's goods and services and information related thereto, instead to Defendants' website. (*See* Figure 11).

```
1  <!DOCTYPE html>
2  <html lang="en-US">
3  <head>
4  <meta name="msvalidate.01" content="C3D0D15F1BD1FCD821ED31AFD6115725"/>
5
6  <meta property="og:title" content="Big10Tens"/>
7  <meta property="og:type" content="article"/>
8  <meta property="og:image" content="http://www.big10tens.com/wp-content/uploads/2013/12/Primaryz1.png"/>
9  <meta property="og:url" content="http://www.big10tens.com/"/>
10 <meta property="og:description" content="College Humor, Hot Girls, Funny Photos, Videos, The Big Ten - In Your Conference. Out Of Your
   League."/>
11 <div id="fb-root"></div>
12 <script>(function(d, s, id) {
13   var js, fjs = d.getElementsByTagName(s)[0];
14   if (d.getElementById(id)) return;
15   js = d.createElement(s); js.id = id;
16   js.src = "//connect.facebook.net/en_US/all.js#xfbml=1&appId=443677229051077";
17   fjs.parentNode.insertBefore(js, fjs);
18 }(document, 'script', 'facebook-jssdk'));</script>
19 <script type="text/javascript">
20
21   var _gaq = _gaq || [];
22   _gaq.push(['_setAccount', 'UA-38305560-1']);
23   _gaq.push(['_trackPageview']);
24
25   (function() {
```

**Figure 11**

Source: http://www.big10tens.com

23.     Defendants' knowing and intentional infringement of the Conference's trademarks has caused and continues to cause confusion among consumers as to the source, sponsorship and/or affiliation of Defendants' website, social media pages and merchandise with the Conference, and will harm the Conference's reputation and the Conference's "Big Ten" brand. Additionally, Defendants' knowing and intentional infringement of the Conference's trademarks has diluted and continues to dilute the famous Big Ten Marks by blurring and tarnishment.

24.     Defendants have ignored the Conference's multiple requests for Defendants to cease their infringing activities, and accordingly, the Conference is left with no option other than to file this lawsuit to protect some of its most valuable assets—its brand identifiers.

## COUNT I: TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT, 15 U.S.C. § 1114(1)

25.     The Conference repeats and incorporates herein each and every allegation set forth in paragraphs 1 to 24 of this Complaint.

14

26.     The Conference has been operating under the name "Big Ten" since as early as 1917 and has exclusive rights in and to the Big Ten Marks as early as this date.

27.     The Big Ten Marks are federally registered and are entitled to protection under both federal law and common law.  The Conference has extensively and continuously promoted and used the Big Ten Marks in the United States and worldwide.  Through that extensive and continuous use and the Conference's significant investments, the Big Ten Marks have become a famous and well-known source indicator of the Conference and its goods and services.

28.     The registrations for the Big Ten Marks cover a wide range of goods and services including, but not limited to, publications, entertainment services, wearing apparel and online retail store services.

29.     Defendants' use of the Big Ten Marks constitutes trademark infringement of the Big Ten Marks, including U.S. trademark registration numbers 1,969,353, 1,858,081, 1,835,913, 1,782,645, 2,589,261, 4,050,908 and 4,184,017 in violation of 15 U.S.C. § 1114.

30.     Defendants' unauthorized use of the Big Ten Marks is likely to cause, has caused and is causing consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendants' website, social media pages and consumer merchandise by creating the false and misleading impression that the Defendants' website, social media pages and consumer merchandise are authorized by, affiliated with or otherwise approved by the Conference.

31.     Defendants had actual or constructive knowledge of the Conference's trademark rights prior to using or continuing to use the Big Ten Marks.

32.     Defendants' infringing uses of the Big Ten Marks have been intentional, willful and malicious.  Defendants' bad faith is evidenced at least by the slogan for the "Big10Tens" website that states "In Your *Conference* Out Of Your League" (*see, e.g.*, Figures 1-4 (emphasis

15

added)), and their admission that "Big10Tens is an entertainment website focused on the Big Ten Conference." (*See* <u>Figure 3</u>).

33.     The willful and intentional nature and the reckless disregard for the most basic level of diligence by Defendants makes this trademark infringement an exceptional case pursuant to 15 U.S.C. § 1117(a) and, accordingly, the Conference is entitled to an accounting, profits, enhanced profits and damages, actual damages, costs and reasonable attorneys' fees.

34.     As a result of Defendants' trademark infringement, the Conference has suffered damages in an amount to be determined at trial.

35.     On information and belief, Defendants have gained profits by virtue of their infringement of the Big Ten Marks.

36.     The Conference has not consented to Defendants' use of the Big Ten Marks in any way.

37.     The Conference has suffered and will continue to suffer irreparable harm to its business, reputation and goodwill as a result of Defendants' actions, and the Conference lacks an adequate remedy at law to compensate for this harm and damage. Accordingly, the Conference is entitled to an injunction by the Court pursuant to 15 U.S.C. § 1116(a).

38.     The Conference is further entitled to an order providing for the destruction of Defendants' infringing consumer merchandise displaying the Big Ten Marks under 15 U.S.C. § 1118.

### <u>COUNT II: TRADEMARK DILUTION</u><br><u>UNDER THE LANHAM ACT, 15 U.S.C. § 1125(c)</u>

39.     The Conference repeats and incorporates herein each and every allegation set forth in paragraphs 1 to 38 of this Complaint.

40.    Defendants' prominent display of the Big Ten Marks on their website and social media pages and their offer to sell, sale, distribution or advertisement of consumer merchandise displaying the Big Ten Marks violates Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

41.    The Big Ten Marks are federally registered and are entitled to protection under both federal law and common law.  The Conference has extensively and continuously promoted and used the Big Ten Marks in the United States and worldwide.

42.    Through the Conference's extensive and continuous use and significant investments, the Big Ten Marks have become a famous and well-known indicator of the origin and quality of the Conference and its goods and services.  The Big Ten Marks became famous well before Defendants commenced their infringing activities.  The Big Ten Marks are inherently distinctive and have also acquired secondary meaning in the marketplace.

43.    Defendants' unauthorized uses of the Big Ten Marks are likely to cause, have caused and continue to cause, dilution of the famous Big Ten Marks by eroding the public's exclusive association of the famous Big Ten Marks with the Conference and by lessening the capacity of the famous Big Ten Marks to identify and distinguish the Conference's goods and services.

44.    Defendants' unauthorized use of the Big Ten Marks in connection with a website dedicated to promoting, among other things, excessive partying and binge drinking—activities and behaviors contrary to the values related to athletics promoted by the Conference under the Big Ten Marks—are likely to cause, have caused and continue to cause, dilution of the famous Big Ten Marks by tarnishment.

45.    On information and belief, Defendants' infringing and diluting uses of the Big Ten Marks have been intentional, willful and malicious.  Defendants' bad faith is evidenced at

least by the slogan for the "Big10Tens" website that states "In Your *Conference* Out Of Your League" (*see, e.g.*, <u>Figures 1-4</u> (emphasis added)), and their admission that "Big10Tens is an entertainment website focused on the Big Ten Conference." (*See* <u>Figure 3</u>).

46.     The willful and intentional nature and the reckless disregard for the most basic level of diligence by Defendants makes this trademark dilution an exceptional case pursuant to 15 U.S.C. § 1117(a) and, accordingly, the Conference is entitled to an accounting, profits, enhanced profits and damages, actual damages, costs and reasonable attorneys' fees.

47.     As a result of Defendants' trademark dilution, the Conference has suffered damages in an amount to be determined at trial.

48.     On information and belief, Defendants have gained profits by virtue of their dilution of the Big Ten Marks.

49.     The Conference has not consented to Defendants' use of the Big Ten Marks in any way.

50.     The Conference has suffered and will continue to suffer irreparable harm to its business, reputation and goodwill as a result of Defendants' actions, and the Conference lacks an adequate remedy at law to compensate for this harm and damage.  Accordingly, the Conference is entitled to an injunction by the Court pursuant to 15 U.S.C. § 1116(a).

51.     The Conference is further entitled to an order providing for the destruction of Defendants' infringing consumer merchandise displaying the Big Ten Marks under 15 U.S.C. § 1118.

<div align="center">

**<u>COUNT III: FALSE DESIGNATION OF ORIGIN UNDER</u>**
**<u>THE LANHAM ACT, 15 U.S.C. § 1125(d)</u>**

</div>

52.     The Conference repeats and incorporates herein each and every allegation set forth in paragraphs 1 to 51 of this Complaint.

<div align="center">18</div>

53.    Defendants' use of the Big Ten Marks as "key words" in the meta tags of its website violates Section 43 of the Lanham Act, 15 U.S.C. § 1125(d).

54.    The Conference has had the exclusive right to use and has used the Big Ten Marks in connection with its goods and services dating back to 1917.

55.    Defendants are knowingly and intentionally using the word "Big Ten" as key words in the meta tags of their website.

56.    Defendants' use of the word "Big Ten" as key words in the meta tags of its website is with the intent of diverting consumers, who use search engines to search the Internet for the Conference's website and goods and services offered by the Conference, to Defendants' website.

57.    In using the Big Ten Marks in the meta tags of its website, it is Defendants' intent that consumers will be tricked into visiting Defendants' website and/or purchasing merchandise from Defendants' website when the consumer intended to visit the Conference's website. Defendants' use of the Big Ten Marks in the meta tags of its website, at least initially, is likely to cause, has caused and continues to cause confusion among consumers as to the source, sponsorship, affiliation or endorsement of Defendants' website and their merchandise.

58.    The Conference has not consented to Defendants' use of the Big Ten Marks in the meta tags of its website.

59.    Defendants had actual or constructive knowledge of the Conference's trademark rights prior to using, or while continuing to use, the Big Ten Marks.

60.    The willful and intentional nature and the reckless disregard of the most basic level of diligence by Defendants makes this false designation of origin an exceptional case

pursuant to 15 U.S.C. § 1117(a) and, accordingly, the Conference is entitled to an accounting, profits, enhanced profits and damages, actual damages, costs and reasonable attorneys' fees.

61.     As a result of Defendants' false designation of origin, the Conference has suffered damages in an amount to be determined at trial.

62.     On information and belief, Defendants have gained profits by virtue of their false designation of origin.

63.     The Conference has suffered and will continue to suffer irreparable harm to its organization, reputation and goodwill as a result of Defendants' actions, and the Conference lacks an adequate remedy at law to compensate for this harm and damage. Accordingly, the Conference is entitled to an injunction by the Court pursuant to 15 U.S.C. § 1116(a).

## COUNT IV: CYBERSQUATTING UNDER THE LANHAM ACT, 15 U.S.C. § 1125(d)

64.     The Conference repeats and incorporates herein each and every allegation set forth in paragraphs 1 to 63 of this Complaint.

65.     On information and belief, Defendants have registered the domain name <big10tens.com> on or about November 5, 2012.

66.     The Conference has been operating under the name "Big Ten" since as early as 1917, and the Conference has had exclusive rights in and to the Big Ten Marks as early as this date.  The Big Ten Marks are federally registered, and through extensive and continuous use and the Conference's significant investments, the Big Ten Marks have become a famous and well-known source indicator of the Conference and its goods and services well before the date on which the <big10tens.com> domain name was registered.

67.     Defendants had actual or constructive knowledge of the Conference's trademark rights prior to registering and using the <big10tens.com> domain name.

68. Defendants' use of the Big Ten Marks in its domain name constitutes cybersquatting in violation of 17 U.S.C. § 1125(d).

69. The domain name <big10tens.com> incorporates the Big Ten Marks in their entirety and dilutes the distinctive character of the Big Ten Marks.

70. Defendants' unauthorized registration and use of the Big Ten Marks as a domain name is likely to cause, has caused and is causing consumer confusion, mistake, or deception as to the origin, sponsorship or approval of Defendants' website.

71. On information and belief, as a result of Defendants' cybersquatting, consumers have visited Defendants' website and/or purchased merchandise from Defendants when they intended to visit the Conference's website and/or purchase merchandise from the Conference.

72. Defendants' unauthorized registration and use of the Big Ten Marks as a domain name is likely to cause, has caused and continues to cause, dilution by blurring of the famous Big Ten Marks by eroding the public's exclusive association of the famous Big Ten Marks with the Conference and by lessening the capacity of the famous Big Ten Marks to identify and distinguish the Conference's goods and services.

73. Defendants' unauthorized registration and use of the Big Ten Marks as a domain name and in connection with a website dedicated to promoting, among other things, excessive partying and binge drinking—activities and behaviors contrary to the values related to athletics promoted by the Conference under the Big Ten Marks—are likely to cause, have caused and continue to cause, dilution of the famous Big Ten Marks by tarnishment.

74. Defendants' registration and use of the Big Ten Marks as a domain name is in bad faith with an intent to profit from the Big Ten Marks and the goodwill associated therewith. Defendants' bad faith is evidenced at least by the slogan for the "Big10Tens" website that states

"In Your *Conference* Out Of Your League" (s*ee, e.g.*, <u>Figures 1-4</u> (emphasis added)), and their admission that "Big10Tens is an entertainment website focused on the Big Ten Conference." (*See* <u>Figure 3</u>). Further, Defendants sell infringing merchandise through the website <big10tens.com> and use this website to generate advertising revenue by wrongfully exploiting the Big Ten Marks.

75. The willful and intentional nature and the reckless disregard for the most basic level of diligence by Defendants makes this cybersquatting an exceptional case pursuant to 15 U.S.C. § 1117(a) and, accordingly, the Conference is entitled to an accounting, profits, enhanced profits and damages, actual damages, costs and reasonable attorneys' fees.

76. The Conference has not consented to Defendants' use of the Big Ten Marks in any way, including as a domain name.

77. As a result of Defendants' cybersquatting, the Conference has suffered damages in an amount to be determined at trial.

78. On information and belief, Defendants have gained profits by virtue of their cybersquatting.

79. The Conference has suffered and will continue to suffer irreparable harm to its business, reputation and goodwill as a result of Defendants' actions, and the Conference lacks an adequate remedy at law to compensate for this harm and damage. Accordingly, the Conference is entitled to an injunction by the Court pursuant to 15 U.S.C. § 1116(a).

<u>**COUNT V: COMMON LAW UNFAIR COMPETITION**</u>

80. The Conference repeats and incorporates herein each and every allegation set forth in paragraphs 1 to 79 of this Complaint.

81. The Conference has not consented to Defendants' use of the Big Ten Marks.

82.     Defendants' use of the Big Ten Marks is with the intent to deceive the public into believing Defendants' website, social media pages and merchandise are affiliated with and/or endorsed or sponsored by the Conference.  Defendants' unauthorized use of the Big Ten Marks constitutes passing off and unfair competition in violation of the common law of the state of Illinois.

83.     Defendants had actual knowledge of the Conference's trademark rights prior to using, or while continuing to use, the Big Ten Marks, resulting in willful and intentional conduct. Accordingly, the Conference is entitled to profits, actual damages, costs and reasonable attorneys' fees.

84.     As a result of Defendants' conduct, the Conference has suffered damages in an amount to be determined at trial.

85.     The Conference has suffered and will continue to suffer irreparable harm to its business, reputation and goodwill as a result of Defendants' actions, and the Conference lacks an adequate remedy at law to compensate for this harm and damage.  Accordingly, the Conference is entitled to an injunction by the Court.

## PRAYER FOR RELIEF

WHEREFORE, as a result of the unlawful acts of Defendants set forth in each of the counts above, the Conference requests that the Court enter a judgment against Defendants:

(a) Preliminarily and permanently enjoining Defendants, its agents, servants, employees, officers and all persons in active concert and participation with them:

     i. From using the Big Ten Marks or any marks similar thereto in connection with any websites or social media pages, including, without limitation, <big10tens.com> and the related Facebook, Twitter and Instagram pages and in the meta tags of any websites dedicated (including <big10tens.com>);

     ii. From using the Big Ten Marks or any marks similar thereto in connection with the manufacture, distribution, advertising for sale, promotion or sale of any goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of clothing items or other consumer merchandise;

     iii. From using any logo, trade name, trademark or trade dress which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of Defendants are sponsored by, authorized by, or in any way associated with the Conference;

     iv. From infringing the Conference's trademarks;

     v. From falsely representing themselves as being connected with, sponsored by or associated with the Conference or the "Big Ten" brand.

(b) Ordering the immediate destruction of all goods bearing the Big Ten Marks or any marks that are similar thereto pursuant to 15 U.S.C. § 1118.

(c) Pursuant to 15 U.S.C. § 1116(a), ordering Defendants to file with the Court and serve upon the Conference's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

(d) Finding that, by the acts complained of above, Defendants have infringed the Conference's federally registered trademarks in violation of 15 U.S.C. § 1114.

(e) Finding that, by the acts complained of above, Defendants have diluted the Big Ten Marks by blurring in violation of 15 U.S.C. § 1125(c).

(f) Finding that, by the acts complained of above, Defendants have diluted the Big Ten Marks by tarnishment in violation of 15 U.S.C. § 1125(c).

(g) Finding that, by the acts complained of above, Defendants have committed cybersquatting in violation of 15 U.S.C. § 1125(d).

(h) Finding that, by the acts complained of above, Defendants have created a false designation of origin, false representation of association and have infringed the Big Ten Marks in violation of 15 U.S.C. § 1125(a).

(i) Finding that, by the acts complained of above, Defendants have engaged in unfair competition under common laws of the State of Illinois.

(j) Finding that by the acts complained of above, Defendants have willfully infringed the Big Ten Marks.

(k) Ordering Defendants to provide the Conference with a full accounting of all manufacture, distribution and sale of all merchandise displaying the Big Ten Marks or any similar marks and a full accounting of all advertising and other revenues generated from their operation of the website <big10tens.com> and any and all

25

related social media pages, including but not limited to the "Big10Tens" Facebook page, the "Big10Tens" Twitter page and the "Big10Tens" and "Big10Men" Instagram pages.

(l) Ordering Defendants to pay the Conference:

    i.    Defendants' profits from the sale of infringing merchandise displaying the Big Ten Marks or any marks similar to the Big Ten Marks;

    ii.    Defendants' profits from the operation of the website <big10tens.com> and any and all related social media pages, including but not limited to the "Big10Tens" Facebook page, the "Big10Tens" Twitter page and the "Big10Tens" and "Big10Men" Instagram pages;

    iii.    Treble actual damages in connection with Defendants' infringement of the Big Ten Marks; and

    iv.    The Conference's costs and reasonable attorneys' fees incurred in this matter.

(l) Awarding the Conference pre-judgment and post-judgment interest against Defendants.

(m) Awarding the Conference such other and further relief as the Court may deem just and proper.

## JURY DEMAND

The Conference hereby demands a trial by jury.

Dated: February 3, 2015   **MAYER BROWN LLP**

       /s/ Richard M. Assmus

       Andrew S. Rosenman (Lead Attorney, #6230148)
       Richard M. Assmus (#6255570)
       Kristine M. Young (#6301230)
       71 South Wacker Drive
       Chicago, Illinois 60606
       Telephone: (312) 782-0600
       arosenman@mayerbrown.com
       rassmus@mayerbrown.com
       kyoung@mayerbrown.com

       *Attorneys for Plaintiff The Big Ten Conference, Inc.*